# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA JEAN RAKOWSKI, | Case No. 1:16-cv-00588-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | **(Doc. 1)** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

On April 26, 2016, Plaintiff Gloria Jean Rakowski ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits. (Doc. 1.) Plaintiff filed her opening brief ("Plaintiff's Motion") on December 5, 2016, (Doc. 14), Defendant filed their opposition on February 3, 2017, (Doc. 17), and Plaintiff filed her reply in support of Plaintiff's Motion on February 17, 2017, (Doc. 18). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.[1]

## I. BACKGROUND

The following includes the pertinent medical and procedural background for this matter. Plaintiff was born on June 15, 1950, and is currently 67 years old. (Administrative Record ("AR") 251.)

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7 & 8.)

On July 18, 2012, Plaintiff filed her claim for disability insurance benefits. (AR 251–52.) Plaintiff alleges that she became disabled on September 20, 2011. (AR 251.) Plaintiff stated that the following conditions limit her ability to work: back injuries, degenerative disc disease, spinal stenosis, arthritis, severe back pain, flat feet, torn right knee meniscus, Hashimoto's thyroiditis, gastritis, diverticulitis, and sciatica. (AR 288.)

On October 13, 2012, Plaintiff was examined by a psychologist, Dr. Aimee Riffel. (*See* AR 454–58.) In her report, Dr. Riffel noted in a section entitled "calculations" that Plaintiff "was unable to perform serial 7s as directed." (AR 456.) Dr. Riffel opined that Plaintiff "has good concentration," "the pace of the examination [was] adequate," and Plaintiff "is able to focus on questions and respond appropriately." (AR 457.) Finally, in a section entitled "functional assessment," Dr. Riffel also opined that Plaintiff "would have difficulty dealing with overall stress within the work environment due to mental health factors." (AR 458.)

Following Plaintiff filing her claim, a state agency psychologist, Dr. Barbara Moura, reviewed Plaintiff's medical records. (*See* AR 107–08.) Dr. Moura opined, in relevant part, that Plaintiff does not have any "severe" mental impairments. (*See id.*)

The Social Security Administration denied Plaintiff's claim initially on November 9, 2012, (AR 127–30), and again on reconsideration on July 25, 2013, (AR 134–38). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on August 23, 2013. (AR 143–45.)

On September 4, 2014, the ALJ held a hearing regarding Plaintiff's claim (the "Hearing"). (*See* AR 28–69.) Plaintiff was represented by counsel at this Hearing. (*See* AR 28.) At the Hearing, Plaintiff testified that she previously worked as "a lab technician," (AR 57), and that she did not have "any other job" in "the last 15 years," (AR 63). A vocational expert ("VE") was testified at the Hearing. (*See* AR 62.) In response to a question from the ALJ regarding "what the *Dictionary of Occupational Titles* has to say about [Plaintiff's] past work," the VE testified that "the laboratory technician position is classified by the Department of Labor as light; it's skilled; SVP 5; DOT 078-381-014." (AR 63 (emphasis added).)

The ALJ then presented a hypothetical to the VE. (*See* AR 63–64.) In the hypothetical, the ALJ described, in relevant part, an individual who could "stand and walk for six out of eight

hours." (AR 63.) In response to this hypothetical, the VE testified that the individual could "perform [Plaintiff's] past work." (AR 64.)

Plaintiff's counsel also posed questions to the VE during the Hearing, including the following pertinent exchange:

[Counsel]: [VE], in your experience, does a -- is a lab technician -- well, [Plaintiff] described a lab technician as being on her feet basically all the time except for the breaks. As in your opinion, would that be the norm for a lab technician?

[VE]: Well, it depends. Some get to sit more than others, but it's classified as light by the Department of Labor, which means that standing and walking can be a significant portion of the responsibilities of the job. So it certainly is consistent.

[Counsel]: And if a person can only stand and/or walk six out of an eight-hour day, can that person perform the job as a lab technician as it's normally done?

[VE]: Based upon the way it's described by the Department of Labor, yes. Based upon the way that [Plaintiff] describes the job, no.

[Counsel]: And in your opinion, have you seen lab technicians in the field doing their job?

[VE]: I have.

[Counsel]: And could these lab technicians -- are these lab technicians on their feet eight hours a day?

[VE]: Like I said, it depends upon the setting and the environment in which they work in. Some are going to be up and around on their feet for a good portion of the day. Others may be sitting up to 50 percent of the time.

[Counsel]: And I believe [Plaintiff] described her job as lifting the reagents I believe it was which weighed --

[Plaintiff]: Yes.

[Counsel]: -- 20 to 25 pounds.

[VE]: Yes.

[ALJ]: [Plaintiff's Counsel] --

[Counsel]: Yes.

3

[ALJ]: -- I'll tell you right now I'm not going to go behind the Department of Labor and the Dictionary of Occupational Titles.

[Counsel]: Okay.

(AR 66–67.)

In a decision dated October 23, 2014, the ALJ found that Plaintiff was not disabled. (AR 9–27.) In the decision, the ALJ conducted the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520. (*See* AR 14–22.) At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since September 20, 2011, the alleged onset date." (AR 14.)

At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar, cervical and thoracic spines; a history of various spinal fractures; status post left ankle fusion; status post left shoulder repair; and obesity." (AR 14.) The ALJ provided the following extensive and relevant discussion in the step two analysis:

> [Plaintiff] was seen by consultative psychologist Aimee Riffel in October 2012. [Plaintiff] presented with complaints of chronic health problems, and mild anxiety and mild depression. She said she last worked in June 2012. The doctor noted [Plaintiff's] mood was unremarkable, her memory was intact, and her concentration was good. She was diagnosed with pain disorder associated with general medical condition, and anxiety due to general medical condition. The doctor estimated that [Plaintiff's] global assessment of functioning . . . was 66, indicating some mild symptoms or moderate difficulty in social, occupational, or school functioning . . . . Dr. Riffel opined [Plaintiff] was capable of performing both simple and complex tasks. She would have difficulty dealing with stress in the work environment . . . .
>
> Psychologist B. Moura of the State agency reviewed [Plaintiff's] medical records regarding her mental impairments and concluded her mental impairments were non-severe . . . .
>
> The opinion of State agency psychologist B. Moura, finding [Plaintiff's] mental impairments to be non-severe, is given great weight . . . . The opinion is well supported, with specific references to medical evidence. The opinion is internally consistent as well as consistent with the evidence as a whole.
>
> The opinion of consultative examiner Dr. Riffel finding the capable [sic] of performing both simple and complex tasks, with some stress difficulties is given weight . . . . However, greater weight has been given to the opinion of Dr. Moura

finding her mental impairments non-severe. [Plaintiff] has not sought, nor received, any treatment from a mental health specialist.

[Plaintiff's] medically determinable mental impairments of pain disorder and anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere.

In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 [C.F.R.], Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, [Plaintiff] has mild limitation. [Plaintiff] said she was able to take care of her personal needs, prepare simple meals, handle money, but was limited in her ability to perform household chores due to a physical problem. . . .

The next functional area is social functioning. In this area, [Plaintiff] has mild limitation. She reported keeping in contact by phone, computer and texting. She said she has occasional visitors. . . .

The third functional area is concentration, persistence or pace. In this area, [Plaintiff] has no limitation. The consultative psychologist assessed her as having no problems in this area. . . .

The fourth functional area is episodes of decompensation. In this area, [Plaintiff] has experienced no episodes of decompensation which have been of extended duration.

Because [Plaintiff's] medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere . . . .

(AR 14–16.)

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (AR 16.) The ALJ next found that Plaintiff has the residual functional capacity ("RFC") to, in pertinent part, "sit, stand and walk 6 hours in an 8-hour workday." (AR 16.)

At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as a laboratory technician." (AR 22.) The ALJ provided the following discussion in the step-four analysis:

> The [VE] testified a laboratory technician (DOT 078.381-014) is classified as light skilled work. The [VE] testified further, that based upon [Plaintiff's] current [RFC], she would be capable of performing this prior relevant work, as generally performed and described in the *Dictionary of Occupational Titles*, even though not as she had performed it.

(AR 22.) Ultimately, the ALJ determined that Plaintiff "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (AR 22.)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 7–8.) On February 26, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1–6.)

Plaintiff then filed the Complaint in this Court on April 26, 2016. (Doc. 1.) Plaintiff filed Plaintiff's Motion on December 5, 2016, (Doc. 14), Defendant filed their opposition on February 3, 2017, (Doc. 17), and Plaintiff filed her reply in support of Plaintiff's Motion on February 17, 2017, (Doc. 18). As such, the briefing in this case is complete and this matter is ready for disposition.

## II. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are

of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 404.1520(a)(4) (providing the "five-step sequential evaluation process"); *id.* § 416.920(a)(4) (same). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

7

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

//

**III. DISCUSSION**

Plaintiff contends that the ALJ erred at steps two and four of the sequential evaluation process. (*See* Doc. 14 at 6–11; Doc. 18 at 2–7.) For the reasons that follow, the Court finds that the ALJ did not err at these steps of the analysis.

**A.     The ALJ's Step-Two Determination Regarding Severe Impairments**

Plaintiff first argues that the ALJ erred in the weight accorded to the opinions of examining and non-examining sources at step two of the sequential evaluation process. (*See* Doc. 14 at 6–8.) The Court disagrees.

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)). "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and Social Security Ruling ("SSR") 86–8).

"[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities." *Id.* at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)). "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." SSR 85–28. Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," (2) "[c]apacities for seeing, hearing, and speaking," (3) "[u]nderstanding, carrying out, and remembering simple instructions," (4) "[u]se of judgment," (5) "[r]esponding appropriately to supervision, co-workers and usual work situations," and (6) "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433

F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85–28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR No. 85–28).

Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (*citing Yuckert*, 482 U.S. at 153–54). Nonetheless, "[t]he plaintiff has the burden of establishing the severity of the impairment." *Cookson v. Comm'r of Soc. Sec.*, No. 2:12–cv–2542–CMK, 2014 WL 4795176, at *2 (E.D. Cal. Sept. 25, 2014); *see, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis." (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989))).

Here, Plaintiff argues that the ALJ erred in according little weight to the opinion of an evaluating psychologist—Dr. Aimee Riffel—that Plaintiff would have difficulty dealing with stress in the work environment. (*See* Doc. 14 at 6–8; Doc. 18 at 2–5.) Specifically, following an evaluation of Plaintiff, Dr. Riffel opined that Plaintiff "would have difficulty dealing with overall stress within the work environment due to mental health factors." (AR 458.) Instead of finding that Plaintiff suffered a severe mental limitation based on Dr. Riffel's opinion, the ALJ accorded "great weight" to a non-examining psychologist—Dr. Barbara Moura—who opined that Plaintiff has no severe mental impairments. (*See* AR 15.)

"In disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining [or reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)).

In this case, Plaintiff alleges—and the record reflects—that Dr. Riffel was an examining psychologist. (*See, e.g.*, Doc. 18 at 2.) "As in the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (quoting *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

Here, Dr. Riffel and Dr. Moura provided conflicting opinions on whether Plaintiff suffers from any severe mental impairments. Specifically, Dr. Riffel opined that Plaintiff "would have difficulty dealing with overall stress within the work environment due to mental health factors," (AR 458), while Dr. Moura opined that Plaintiff does not have any severe mental impairments, (*see* AR 107–08). As such, the ALJ must provide specific and legitimate reasons to reject Dr. Riffel's opinion that Plaintiff suffers from a severe mental limitation. *See, e.g.*, *Lester*, 81 F.3d at 830 (citation omitted).

The ALJ can satisfy the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (alteration in original) (citations omitted). Nonetheless, "the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings." *Deal v. Comm'r of Soc. Sec.*, No. 2:15–CV–2697–CMK, 2017 WL 1198505, at *2 (E.D. Cal. Mar. 31, 2017) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)).

Here, the ALJ accorded more weight to Dr. Moura's opinion that Plaintiff does not suffer from a severe mental limitation because, in relevant part, Dr. Moura's "opinion is internally consistent as well as consistent with the evidence as a whole."[2] (AR 15.) The ALJ then discussed the reasons why Plaintiff's "mental impairments of pain disorder and anxiety disorder, considered singly and in combination, do not cause more than minimal limitation." (AR 15.) Specifically, the ALJ addressed each of the four pertinent functional restrictions relating to mental impairments and noted that the record reflected that Plaintiff has only "mild limitation" in "activities of daily living," "social functioning," and "concentration, persistence or pace,"[3] as well as no "episodes of

---

[2] The ALJ provided an additional reason for according great weight to Dr. Moura's opinion and less weight to Dr. Riffel's opinion—Plaintiff "has not sought, nor received, any treatment from a mental health specialist." (AR 15.) The Ninth Circuit has stated that "the fact that [a] claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of [a] claimant's condition is inaccurate." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996); *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (noting that the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation'" (quoting *Nguyen*, 100 F.3d at 1465)). As such, Plaintiff's failure to seek treatment regarding a mental ailment is not a specific and legitimate reason to discount Dr. Riffel's opinion regarding Plaintiff's mental limitations. *See, e.g.*, *Ferrante v. Astrue*, 285 F. App'x 413, 413 (9th Cir. 2008) ("[F]ailure to seek treatment for alleged depression does not constitute a legitimate reason to reject a diagnosis of depression . . . ." (citing *Nguyen*, 100 F.3d at 1465)).

[3] Plaintiff also argues that the ALJ erred by according little weight to Plaintiff's results in a series-seven examination performed by Dr. Riffel. (*See, e.g.*, Doc. 18 at 3.) In particular, Plaintiff argues that Dr. Riffel "performed a mental status examination that uncovered an inability to perform serial sevens" and "[t]he inability to perform serial sevens is a quintessential test of the ability to sustain concentration, persistence, or pace." (*Id.*) However, as the ALJ noted, (*see* AR 15), the examining psychologist who performed this test—Dr. Riffel—herself found that Plaintiff has no issues with concentration, persistence, or pace, (*see* AR 457). As such, Plaintiff essentially requests that the Court ignore the opinion of Dr. Riffel as to the results of a test that she, herself, performed. The Court declines Plaintiff's

decompensation." (AR 15.) *See generally* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C) ("[The ALJ] measure[s] severity according to the functional limitations imposed by [a claimant's] medically determinable mental impairment(s). [The ALJ] assess[es] functional limitation using the four criteria in paragraph B of the listings: [a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."). In short, the ALJ addressed the four relevant functional restrictions and found that they did not result in a severe mental limitation. (AR 15–16.) *See generally Hernandez v. Astrue*, No. ED CV 10–1215–PLA, 2011 WL 1810901, at *3 (C.D. Cal. May 12, 2011) (stating that, "[i]f a claimant is rated as having greater than 'mild' limitations in any of the first three criteria or more than no episodes of decompensation in criteria four, or if 'the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities,'" then "the claimant's mental impairment should be found to be 'severe'" (quoting 20 C.F.R. §§ 404.1520a & 416.920a)).

This additional objective evidence in the record demonstrating that Plaintiff does not suffer from a severe mental limitation is sufficient substantial evidence to accord greater weight to Dr. Moura's opinion that Plaintiff does not have a mental limitation. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews*, 53 F.3d at 1041)). Further, the ALJ's stated reason for according more weight to this portion of Dr. Moura's opinion—consistency with the objective evidence in the record, as a whole—is a valid specific and legitimate reason to accord more weight to Dr. Moura's opinion than the contradictory opinion of Dr. Riffel. *See, e.g.*, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit [a treating or examining] physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." (citations omitted)); *Wheeler v.*

---

invitation to interpose its own judgment as to the meaning of results of certain tests in place of the judgment of the psychologist who performed those tests, as well as the judgment of the ALJ who analyzed those results for purposes of making the disability determination. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." (citation omitted)).

13

*Astrue*, No. 1:10–cv–02053 GSA 2011 WL 5884225, at *6 (E.D. Cal. Nov. 23, 2011) (finding that the ALJ's rejection of an examining physician's opinion was supported by specific and legitimate reasons where the opinion was "inconsistent with the medical record"). As such, the ALJ did not err in rejecting Dr. Riffel's opinion regarding Plaintiff's mental impairments.

For these reasons, the Court finds that substantial evidence supports the ALJ's step-two determination that Plaintiff does not suffer from a severe mental limitation. Accordingly, the Court DENIES Plaintiff's Motion, (Doc. 14), insofar as Plaintiff contends that the ALJ erred at step two of the sequential evaluation analysis.

**B.    The ALJ's Step-Four Determination Regarding Past Relevant Work**

Plaintiff also argues that the ALJ erred at step four of the sequential evaluation process by finding that Plaintiff could perform her past relevant work, as the work is generally performed. (*See* Doc. 14 at 9–11; Doc. 18 at 5–7.) The Court again disagrees with Plaintiff's position.

"At step four, claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) & 416.920(e)). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* (citing SSR 82–62). "This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work." *Id.* (citing 20 C.F.R. §§ 404.1520(e) & 416.920(e)). In particular, "[t]o determine whether a claimant has the residual capacity to perform his past relevant work, the Secretary must ascertain the demands of the claimant's former work and then compare the demands with his present capacity." *Villa v. Heckler*, 797 F.2d 794, 797–98 (9th Cir. 1986) (citation omitted); *see also* SSR 82–62 ("Evaluation . . . requires careful consideration of the interaction of the limiting effects of the [claimant's] impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual can still do that work."). Importantly, "[t]he claimant has the burden of proving an inability to return to his former *type* of work and not just to his former job." *Villa*, 797 F.2d at 798 (citations omitted).

14

"[T]he Social Security Administration has set forth . . . three tests" to "determine whether a claimant retains the capacity for past relevant work." *Kimzey v. Comm'r of Soc. Sec.*, No. 1:09–cv–01808 JLT, 2011 WL 1230818, at *10 (E.D. Cal. Mar. 30, 2011); *cf. Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) ("ALJs may use either the 'actually performed test' or the 'generally performed test' when evaluating a claimant's ability to perform past work." (citing SSR 81–61)). The first test is "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., 'delivery job,' 'packaging job,' etc." SSR 82–61. However, "[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." *Id.*

The second test is "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it." *Id.* "The Social Security Regulations provide that the ALJ may draw on two sources of information to define the claimant's past relevant work as actually performed: (1) the claimant's own testimony, and (2) a properly completed vocational report." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto*, 249 F.3d at 845).

The third test is "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82–61. "Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.* "Thus, the 'generally performed test' is designed for situations where a claimant's past job was especially demanding when compared with industry standards." *Stacy*, 825 F.3d at 569.

"Usually, 'the best source for how a job is generally performed' in determining the requirements of a claimant's past relevant work is the *Dictionary of Occupational Titles*, and vocational expert testimony may be considered at step four of the analysis." *Kimzey*, 2011 WL 1230818, at *10 (quoting *Pinto*, 249 F.3d at 845–46); *see also* SSR 82–61 ("The *Dictionary of*

15

*Occupational Titles* . . . descriptions can be relied upon -- for jobs that are listed in [this source] -- to define the job as it is *usually* performed in the national economy."). Nonetheless, "[i]t is understood that some individual jobs may require somewhat more or less exertion than the [*Dictionary of Occupational Titles*] description." SSR 82–61.

"Regardless of which test is applied at step 4, the ALJ may not classify a past occupation 'according to the least demanding function.'" *Stacy*, 825 F.3d at 569 (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008)). Specifically, an ALJ errs if they "equat[e]" the "least demanding aspect" of "the claimant's past job" with "a full time job" where the claimant performed that "aspect" of their past job "less than half the time." *Id.* at 570.

Here, the ALJ followed the third test and found that Plaintiff can perform her prior relevant work of "laboratory technician," "as generally performed and described in the *Dictionary of Occupational Titles*, even though not as she had [actually] performed it." (AR 22.) In support of this finding, the ALJ relied on the testimony of the VE at the Hearing. (*See* AR 22.) Plaintiff argues that the ALJ erred in this finding because the job of "laboratory technician" as generally performed may require standing for more than six out of eight hours, (Doc. 18 at 6), whereas the ALJ found that Plaintiff has an RFC that limits her to "sit[ting], stand[ing] and walk[ing] 6 hours in an 8-hour workday," (AR 16).

The Court disagrees with Plaintiff's position. The *Dictionary of Occupational Titles* listing for "medical-laboratory technician" describes this job as "[l]ight [w]ork." *Medical-Laboratory Technician*, Dictionary of Occupational Titles, 1991 WL 646827 (4th ed. 1991); (*see also* AR 63 (providing the VE's testimony at the hearing that "the laboratory technician position is classified . . . as light" (citation omitted).) The *Dictionary of Occupational Titles* describes "light work" as requiring, in relevant part, "walking or standing to a significant degree." Dictionary of Occupational Titles, app. C (4th ed. 1991). "The [*Dictionary of Occupational Titles*] does not indicate what is meant by the word 'significant.'" *Williams v. Astrue*, No. CV 10–5351–OP, 2011 WL 977507, at *2 (C.D. Cal. Mar. 17, 2011). The Social Security Regulations describe "light work" as requiring "a good deal of walking or standing." 20 C.F.R. § 416.967(b). Further, Social

Security Ruling 83–10 provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."[4]

Courts have found that an RFC that limits a claimant to standing or walking for six hours out of an eight-hour workday is generally consistent with a designation of "light work" for purposes of the *Dictionary of Occupational Titles*. *See, e.g.*, *Davis v. Colvin*, Case No. 6:15-cv-0044-SI, 2016 WL 424992, at *9 (D. Or. Feb. 3, 2016) (finding that the plaintiff, who was "limited to walking or standing six hours in an eight-hour workday," could perform the "light work" of "an office cleaner"); *Bailey v. Astrue*, No. EDCV 09–1452–OP, 2010 WL 1233459, at *6 (C.D. Cal. Mar. 22, 2010) (stating that "[t]he jobs available at the light level of work do not conflict with" a six-hour "standing/walking limitation"); *see also Holman v. Shalala*, 42 F.3d 1400, at *2 (9th Cir. 1994) ("Light work requires six hours of standing or walking . . . ."). The Court agrees with these decisions. The *Dictionary of Occupational Titles* "shows generally what is required of workers, 'not what individual workers are expected to perform on specific jobs.'" *Turner v. Chater*, 103 F.3d 145, at *1 (10th Cir. 1996) (quoting Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (1993)). Indeed, the *Dictionary of Occupational Titles* itself states that the "[o]ccupational information contained in [the *Dictionary*] reflects jobs as they have been found to occur, but they may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." *Special Notice*, Dictionary of Occupational Titles, 1991 WL 645963 (4th ed. 1991). As such, a job described in the *Dictionary of Occupational Titles* that is described as "light work" is, as a general rule, entirely consistent with an RFC that limits a claimant to walking or standing for six hours out of an eight-hour workday, regardless of whether isolated versions of that job in

---

[4] In her discussion regarding "the six-hour standing or walking paradigm," Plaintiff asserts that "[t]he Commissioner does not get deference in interpreting publications from other agencies." (Doc. 14 at 10 (citation omitted).) Although somewhat unclear, it appears that Plaintiff may be referring to the statement that light work involves "approximately six hours" in Social Security Ruling 83–10. (*See id.*) To the extent Plaintiff argues that Social Security Ruling 83–10 is inapplicable here, the Court rejects this contention. *See, e.g.*, *Thun v. Astrue*, No. CV 11–2329–E, 2011 WL 5554520, at *2–3 (C.D. Cal. Nov. 14, 2011) (considering the standing-or-walking requirement under SSR 83–10 when addressing the description of "light work" under the *Dictionary of Occupational Titles*). Indeed, Plaintiff herself abandons this argument in her reply brief. In particular, Plaintiff clarifies her argument in the reply brief when she states that "[a]pproximately six hours a day does not mean a maximum of six hours a day." (Doc. 18.) As such, Plaintiff appears to adopt the pertinent standard from Social Security Ruling 83–10 in her reply brief, rather than argue that this standard is inapplicable. (*See id.*)

17

1 particular workplaces may require walking or standing for a period of time below or in excess of six hours.[5] *See, e.g.*, *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) ("[A]n occupation found to have certain characteristics in job situations observed by the employment service does not necessarily preclude the same occupation from having different characteristics in other job situations." (citation omitted)); SSR 00–4p (stating that the *Dictionary of Occupational Titles* "lists maximum requirements of occupations *as generally performed*, not the range of requirements of a particular job as it is performed in specific settings" (emphasis added)).

Based on the testimony of the VE in this case, the ALJ found that Plaintiff could perform the "light work" of laboratory technician as generally performed, notwithstanding that Plaintiff's RFC limited her to sitting, standing, and walking no more than six hours in an eight-hour workday. (*See* AR 22.) As the typical requirements of this work are consistent with Plaintiff's sitting, standing, and walking limitation, the Court finds that the ALJ did not err when finding that

---

[5] In her briefing, Plaintiff also argues that the ALJ did not permit her to explore with the VE whether the job of laboratory technician requires more than "six hours of standing and walking in a workday." (Doc. 18 at 6.) In particular, during the hearing, the ALJ stated that they were "not going to go behind the . . . Dictionary of Occupational Titles" during Plaintiff's discussion with the VE regarding whether the VE had "seen lab technicians in the field doing their job." (AR 67.)

As noted by the Ninth Circuit, "a claimant is not foreclosed from undertaking the burdensome task of demonstrating that the *Selected Characteristics*" associated with the *Dictionary of Occupational Titles* "inaccurately evaluates the exertional demands of a job title that does apply." *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). Social Security Ruling 00–4p also states that "[a] VE . . . or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the [*Dictionary of Occupational Titles*]."

Here, the ALJ did not prevent Plaintiff from exploring with the VE the relevant walking and standing requirements of the job of laboratory technician. Specifically, in response to a question from Plaintiff, the VE testified that, "[b]ased upon the way it's described by the Department of Labor," a person who could "only stand and/or walk six out of an eight-hour day" could "perform the job [of] a lab technician as it's normally done." (AR 66–67.) In other words, the VE confirmed that the *Dictionary of Occupational Titles* accurately described the walking and standing requirements for the job of laboratory technician, as this job is generally performed. (*See id.*)

To the extent Plaintiff sought to identify specific versions of the job of laboratory technician that required walking or standing in excess of six hours during an eight-hour workday, that testimony would be irrelevant. As discussed at length above, the pertinent issue is whether the description of a job in the *Dictionary of Occupational Titles* accurately describes a job as it is generally performed and not whether specific variations of the job require more or less walking or standing. *See, e.g.*, SSR 00–4p (stating that the *Dictionary of Occupational Titles* "lists maximum requirements of occupations *as generally performed*, not the range of requirements of a particular job as it is performed in specific settings" (emphasis added)). As the ALJ testified that the *Dictionary of Occupational Titles* accurately describes the job of laboratory technician "as it's normally done," (AR 67), further questioning from Plaintiff regarding specific variations of this job in particular workplaces would not be material to the disability determination, *cf. Special Notice*, Dictionary of Occupational Titles, 1991 WL 645963 (4th ed. 1991) (stating that users of the *Dictionary of Occupational Titles* who "demand[] specific job requirements should supplement this data with local information detailing jobs within their community").

For these reasons, the Court is not persuaded by Plaintiff's argument that the ALJ erred by foreclosing Plaintiff's attempt to rebut the general proposition that the job of laboratory technician requires exertional demands in excess of those provided by the *Dictionary of Occupational Titles*.

18

| | |
|---|---|
| 1 | Plaintiff could perform this past relevant work, as this work is generally performed. *Cf. Wester v. Colvin*, Case No. SACV 14–1212–JPR, 2015 WL 4608139, at *6 (C.D. Cal. July 31, 2015) ("Courts have rejected claims based on conflict . . . when a [*Dictionary of Occupational Titles*] description does not, on its face, conflict with the claimant's RFC if the VE's testimony or the tasks described by the [*Dictionary of Occupational Titles*] confirm that the job would accommodate the claimant's limitations." (collecting cases)). |
| 7 | For these reasons, the Court finds that substantial evidence supports the ALJ's step-four determination. The Court therefore DENIES Plaintiff's Motion, (Doc. 14), insofar as Plaintiff argues that the ALJ erred at step four of the sequential evaluation process. |

### IV. CONCLUSION AND ORDER

For the reasons provided above, the Court DENIES Plaintiff's Motion, (Doc. 14), and AFFIRMS the final decision of the Commissioner. The Clerk of this Court is directed to enter judgment in favor of the Defendant.

IT IS SO ORDERED.

Dated: **August 3, 2017**　　　　　　　　　　　　/s/ *Sheila K. Oberto*
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE